UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC WILLIAM OLIVERIO-STILL, individually and on behalf of others similarly,<br><br>Plaintiffs,<br><br>v.<br><br>AVMAC LLC,<br><br>Defendant. | Case No.: 24-cv-0870-L-DEB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>[ECF No. 15] |

Pending before the Court is Defendant AVMAC LLC's ("AVMAC" or "Defendant") motion to dismiss Plaintiff Eric William Oliverio-Still's ("Plaintiff") putative collective action asserting violations of the Fair Labor Standards Act ("FLSA"). (ECF No. 15.) Plaintiff filed an opposition and Defendant replied. The Court decides the matter on the papers submitted without oral argument. *See* Civ. L. R. 7.1(d)(1). For the reasons stated below, the Court grants in part and denies in part AVMAC's motion to dismiss.

I. **BACKGROUND**[1]

Plaintiff worked for AVMAC in California as a non-exempt employee from about July 2019 to April 2024. AVMAC was a government contractor providing services at

---

[1] All background information is taken from the operative complaint. (ECF No. 12, First Am. Compl. ("Compl.").)

1

Marine Corps Air Station, Miramar in San Diego County.  Defendant employed Plaintiff as a Hazardous Material Coordinator.

In addition to earning hourly wages, Defendant paid Plaintiff other forms of non-discretionary compensation, including fringe health and welfare cash payments.  These payments were designated on wage statements as "HEALTH & WELF" and were paid as cash in lieu of benefits.  They were not paid to third parties or outside benefit providers.  Defendant made these payments to discharge its obligation to furnish fringe benefits under the Service Contract Act ("SCA"), 41 U.S.C. §§ 6701 *et seq.*, which governs federal contractors, including AVMAC.  Plaintiff claims that AVMAC underpaid his wages by failing to include all forms of remuneration, including cash in lieu of fringe benefits, into the regular rate of pay used to calculate overtime, sick, and premium wages.

Plaintiff also claims he was not paid for all the hours he worked.  He regularly waited 5-10 minutes in line before a security check to enter the Marine Corps base.  He then spent another 5-10 minutes driving to his designated worksite where he clocked in.  Furthermore, Defendant automatically deducted meal periods from Plaintiff's pay, even when Plaintiff was unable to take a meal break.

Based on the foregoing, Plaintiff filed a complaint alleging FLSA violations.  Plaintiff brought this action as a putative opt-in collective action under 29 U.S.C. § 216(b).  No other Plaintiffs have opted in to date.  The Court has jurisdiction over this matter under 28 U.S.C. § 1331.  Pending before the Court is Defendant's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## II.    DISCUSSION

A Rule 12(b)(6)[2] motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal "is appropriate only where the

/ / / / /

---

[2]    Unless noted otherwise, all references to "Rule" and "Rules" are to the Federal Rules of Civil Procedure.

complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 1008 (9th Cir. 2018).[3]

To withstand a Rule 12(b)(6) motion, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard demands more than "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a Rule 12(b)(6) motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997, 999 n.3 (9th Cir. 2006). However, a court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Defendant argues that Plaintiff's case is precluded by Section 301 of the Labor Management Relations Act ("LMRA"). Alternatively, Defendant argues that none of Plaintiff's claims are adequately alleged or cognizable under the law.

**A.    LMRA Preclusion**

Defendant maintains this action is precluded by the LMRA because Plaintiff was a member of the International Association of Machinists and Aerospace Workers AFL-CIO and worked under a collective bargaining agreement ("CBA") during his employment

---

[3]    Unless noted otherwise, internal quotation marks, ellipses, brackets, citations, and footnotes are omitted from citations.

with AVMAC. In support of this argument, Defendant seeks judicial notice of two CBAs in effect during Plaintiff's employment.[4] (ECF Nos. 15-4 and 15-5.)

> Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) …. When matters outside the pleading are presented to and not excluded by the court, the 12(b)(6) motion converts into a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). Then, both parties must have the opportunity to present all the material that is pertinent to the motion. [¶] There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201.

*Khoja,* 899 F.3d at 998.

The Court takes judicial notice of the CBA pursuant to Rule of Evidence 201(b)(2), which provides for judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Plaintiff does not dispute the authenticity of the CBA lodged by Defendant and does not oppose taking judicial notice.

Defendant argues that the LMRA precludes all Plaintiff's claims. In part, the LMRA was enacted to

> to prescribe the legitimate rights of both employees and employers in their relations affecting commerce, to provide orderly and peaceful procedures for preventing the interference by either with the legitimate rights of the other, [and] to protect the rights of individual employees in their relations with labor organizations[.]

29 U.S.C. § 141(b). To this end, Section 301 provides that "[s]uits for violation of contracts between an employer and a labor organization … may be brought in any district court[.]" 29 U.S.C. § 185(a).

> [Although o]n its face, § 301 reads as a jurisdictional statute, and it contains no express language of preemption, the Supreme Court has long interpreted

---

[4] The CBAs cover successive periods of time. Although they are not identical, the provisions referenced in briefing are the same in all relevant respects. (*See* ECF No. 15-5.) The CBAs are referred herein collectively as "CBA."

the provision as authorizing federal courts to create a uniform body of federal common law to adjudicate disputes that arise out of labor contracts.

*Columbia Exp. Terminal, LLC v. Int'l Longshore & Warehouse Union*, 23 F.4th 836, 841 (9th Cir. 2022) ("*Columbia*"). Accordingly, the LMRA impliedly preempts state law. *Id*.

The parties use the terms "preclusion" and "preemption" interchangeably. The preemption doctrine concerns the primacy of federal laws over state laws, while preclusion determines whether one federal law precludes action under another federal law. *Felt v. Atchison, Topeka & Santa Fe R.R. Co.*, 60 F.3d 1416, 1418-19 (9th Cir. 1995). The issue here is whether the LMRA precludes Plaintiff's FLSA claims.

The two-step analysis under state law preemption applies to federal preclusion. *Columbia,* 23 F.4th at 841, 843. In the preemption context, the analysis is stated as follows:

> [1] Does the claim seek purely to vindicate a right or duty created by the CBA itself? If so, then the claim is preempted, and the analysis ends there. [¶] [2] But if not, we proceed to the second step and ask whether a plaintiff's state law right is substantially dependent on analysis of the CBA, which turns on whether the claim cannot be resolved by simply looking to versus interpreting the CBA.

*Id.* at 842. Accordingly, Section 301(a) governs claims founded directly on rights created by a CBA as well as claims which cannot be resolved without interpreting the CBA. *Id.* at 843.

As alleged, Plaintiff's claims are not founded on his contractual rights under the CBA but on his statutory rights under the FLSA. The issue is whether Plaintiff's FLSA claims require interpretation of the CBA.[5] Defendant argues that Plaintiff's claims substantially depend on the terms of the CBA and are therefore precluded by the LMRA.

---

[5]   Although argued at length in the opposition (ECF No. 16, "Opp'n" at 11-16), Defendant does not contend that failure to exhaust CBA grievance procedures by itself precludes Plaintiff's FLSA claims. (*See* ECF No. 17, Reply at 4.)

1. <u>Failure to Pay All Overtime Wages</u>

Plaintiff alleged that AVMAC compensated him in part with cash in lieu of fringe benefits. (Compl. ¶ 56.) These cash benefits are listed on wage statements as "HEALTH & WELF" line items. (*Id.* at ¶ 21.) Plaintiff claims that AVMAC failed to include these payments in his regular rate of pay for purposes of calculating overtime pay. (*Id.* at ¶ 57.)

The FLSA excepts from the calculation of the regular rate of pay the contributions made to a "trustee or third person pursuant to a bona fide plan for providing old-age, retirement, life, accident, or health insurance or similar benefits for employees." 29 U.S.C. § 207(e)(4). Defendant argues that to determine if this exception applies here, the Court must look to the CBA. Defendant points to the CBA provision requiring AVMAC to "contribute to the IAM National Pension Fund" and stating that those contributions "are provided from the Health & Welfare Rate specified in Article 17.02." (*See* ECF No. 15-1, "Mot." at 10, citing CBA Art. 18.01.) Further, employer contributions to the 401(k) plan "are provided from the Health & Welfare Rate specified in Article 17.02." (Mot. at 10, citing CBA Art. 18.02.) Finally, Article 17.02 of the CBA provides the payment schedule for the Health & Welfare payments. (Mot. at 10.)

While the CBA includes provisions about contributions to the IAM pension fund and the 401k plan, Plaintiff's claim is explicitly *not* directed at those payments, but at the cash payments he received in lieu of fringe benefits. Similarly, while Article 17.02 of the CBA provides that employees receive Health & Welfare payments according to a specified payment schedule, this provision merely provides the set rate the employees are paid. Taking the rate from the schedule does not involve interpreting the CBA. When, as here, the meaning of CBA terms is not the subject of dispute, the bare fact that a CBA will be consulted does not require LMRA preclusion. *See Livadas v. Bradshaw,* 512 U.S. 107, 124 (1994); *see also Cramer v. Consol. Freightways Inc.*, 255 F.3d 683, 692 (9th Cir. 2001).

Defendant next points to the SCA, which states that the obligation to provide employee fringe benefits may be discharged by "furnishing any equivalent combinations

of fringe benefits or by making equivalent or differential payments in cash under regulations established by the Secretary[,]" and explains when those cash payments are excluded from the regular rate of pay. 41 U.S.C. §§ 6703(2), 6707(e).

Defendant argues that if the cash equivalent payments must be incorporated into the regular rate of pay calculation as Plaintiff proposes, the Court must interpret the CBA to determine (1) if the alleged benefit at issue is indeed a fringe benefit as defined by the SCA, and (2) if the equivalent cash payments are proper and thus eligible for incorporation into the regular rate of pay. (Mot. at 11.)

The Court disagrees. While the analysis whether cash in lieu of benefits must be included in Plaintiff's rate of pay requires interpretation and application of the SCA, it does not require interpretation of the CBA but only a reference to the payment schedule in Article 17.02. Accordingly, Plaintiff's claim is not precluded by the LMRA. *See Burnside v. Kiewit Pacific Corporation*, 491 F.3d 1053, 1060 (9th Cir. 2007).

2.   Failure to Pay for All Hours Worked

Plaintiff claims that he was not paid for all hours worked. He was required to wait to undergo security checks and travel before reaching his worksite where he could clock in. (Compl. ¶ 29.) He claims he was not compensated for this time. (*Id.*)

Defendant argues that the claim is precluded by the LMRA because the Court would need to interpret the CBA to determine whether the claim is excepted from the FLSA by the Portal-to-Portal Act, 29 U.S.C. § 254(a). The Portal-to-Portal Act provides that employers are not liable under the FLSA if they exclude from compensable time the time spent undergoing security checks, unless security checks are "integral and indispensable" to the employee's work. *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 36 (2014) ("*Busk*"). Defendant maintains that interpretation of the CBA is required "to understand the full scope of the duties … and how they are unrelated to the security screening process[.]" (Mot. at 11-12.) Defendant points to the Appendix to the CBA which "contains a comprehensive list of job titles that union members fulfill[.]" (*Id.*)

/ / / / /

This argument is unpersuasive. The Appendix lists rates of pay for various job titles. Neither the CBA nor its Appendix attempts to describe the duties of each job. Such duties therefore cannot be discerned by interpreting the CBA. Accordingly, the unpaid wages claim is not precluded by the LMRA.

### B. Sufficiency of Claims Under the FLSA

#### 1. Failure to Pay All Overtime Wages

Plaintiff alleged that AVMAC compensated him in part with cash in lieu of fringe benefits but failed to include these payments in calculating his overtime pay. (Compl. ¶¶ 56, 57.) Defendant argues that the claim should be dismissed because regulations promulgated under the SCA exclude cash in lieu of fringe benefits from calculating overtime.

Defendant initially cites the SCA, 41 U.S.C. § 6707(e):

> **Exclusion of fringe benefit payments in determining overtime pay**.--In determining any overtime pay to which a service employee is entitled under Federal law, the regular or basic hourly rate of pay of the service employee does not include any fringe benefit payments computed under this chapter which are excluded from the definition of "regular rate" under section 7(e) of the Fair Labor Standards Act of 1938 (29 U.S.C. § 207(e)).

(emph. in orig.) To complete the argument, Defendant relies on a Department of Labor ("DOL") regulation interpreting the SCA, which states in pertinent part as follows:

> [The SCA] permits an employer to discharge his obligation to provide the specified fringe benefits by … payments in cash. … If the employer … makes cash payments … to an employee as therein authorized, the amounts thereof … may be excluded pursuant to such Act from the employee's regular or basic rate of pay in computing any overtime pay due the employee under the Fair Labor Standards Act[.] This means that such … cash payments which are authorized under the [SCA] to be provided in lieu of the fringe benefits … are excludable from the regular rate in applying the overtime provisions of the Fair Labor Standards Act if the fringe benefits specified under the [SCA] would be so excludable if actually furnished. This is true regardless of whether the … payments themselves meet the requirements of section 7(e) of the Fair Labor Standards Act[.]

29 C.F.R. § 778.7; *see also id.* § 4.177(e).

By its plain terms, the SCA, 41 U.S.C. § 6707(e), excludes only payments "which are excluded from the definition of 'regular rate' under section 7(e) of the Fair Labor Standards Act of 1938 (29 U.S.C. § 207(e))." The FLSA, 29 U.S.C. § 207(e), lists eight categories of payments from the regular rate of pay; however, none of them references cash payments to employees in lieu of fringe benefits. Defendant does not attempt to identify such a category in Section 207(e). To the contrary, cash in lieu of benefits is not properly excluded under the FLSA. *Flores v. City of San Gabriel*, 824 F.3d 890, 902 (9th Cir. 2016). On the plain terms of the SCA, 41 U.S.C. § 6707(e), fringe benefit payments made to employees in cash are not excluded because they are not excluded under the FLSA, 29 U.S.C. § 207(e). Accordingly, Defendant's argument rests entirely on DOL regulations, 29 C.F.R. §§ 778.7 and 4.177(e), which are contrary to the statute they purport to interpret. *Cf.* 41 U.S.C. § 6707(e).

Section 6707(e) is not ambiguous, and Defendant does not contend that it is. The Court therefore relies on its plain terms rather than the DOL regulations contradicting them. *See Loper Bright Enterprises v. Raimondo,* 603 U.S. 369, 402-03 (2024); *overruling Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) ("ultimate interpretive authority" no longer delegated to the agency). Defendant's argument is therefore rejected.

### 2. Failure to Pay for All Hours Worked

Defendant next argues that Plaintiff's claims for unpaid wages related to the time spent at security checkpoints and traveling from the checkpoints to the worksite is barred by the Portal-to-Portal Act. The Act excepts from liability under the FLSA the employer's failure to compensate employees for the following:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a).

Generally, employer-mandated activities performed before or after a work shift are not compensable under the Portal-to-Portal Act if the surrounding circumstances indicate the activity is not "integral and indispensable to the principal activities that an employee is employed to perform." *Busk*, 574 U.S. at 37; *see also* 29 C.F.R. § 785.24 ("Activities such as checking in and out and waiting in line to do so would not ordinarily be regarded as integral parts of the principal activity or activities."). They may be compensable if they "are an integral and indispensable part of the principal activities." *Steiner v. Mitchell*, 350 U.S. 247, (1956); *see also Mitchell v. King Packing Co.*, 350 U.S. 260, 261 (1956).

> [A]an activity is integral and indispensable to the principal activities that an employee is employed to perform—and thus compensable under the FLSA—if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities.

*Busk,* 574 U.S. at 37.

The inquiry whether an activity is integral and indispensable is fact specific. *Alvarez v. IBP, Inc.,* 339 F.3d 894, 902-903 (9th Cir. 2003). When determining if an activity is integral and indispensable to the principal activities for which an employee was hired, it is the nature of the work to be performed that drives the analysis. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 42 (2005); *Mitchell*, 350 U.S. at 262. A court must therefore look to the specific tasks and surrounding circumstances in conducting the inquiry.

For instance, the time spent by meatpackers sharpening their knives was held to be compensable because that activity was necessary to avoid dull blades that would "slow

down production," "affect the appearance of the meat," and "lead to accidents." *Mitchell*, 350 U.S. at 262. In contrast, poultry-plant workers were not to be compensated for time spent waiting to put on protective gear because the waiting was "two steps removed from the productive activity on the assembly line." *IBP, Inc.,* 546 U.S. at 42. Similarly, a post-shift security screening for Amazon warehouse workers was not an integral and indispensable part of the employee's principal activities because "the screenings were not an intrinsic element of retrieving products from warehouse shelves" and could have been eliminated "altogether without impairing the employees' ability to complete their work." *Id.* at 35.

Defendant complains that Plaintiff did not allege sufficient facts to show that the security checks were integral and indispensable to his job as a Hazardous Material Coordinator. Plaintiff counters that this determination should not be made at the pleading stage. The Court agrees.

Defendant's argument that the Portal-to-Portal act bars Plaintiff's claim is in the nature of an affirmative defense. *See Nayab v. Capital One Bank (USA), N.A.,* 942 F.3d 480, 495 (9th Cir. 2019) ("[W]hen a proviso carves an exception out of the body of a statute … those who set up such exception must prove it.") "[P]laintiffs ordinarily need not plead on the subject of an anticipated affirmative defense. When an affirmative defense is obvious on the face of a complaint, however, a defendant can raise that defense in a motion to dismiss." *Rivera v. Peri & Sons Farms, Inc.,* 735 F.3d 892, 902 (9th Cir. 2013). It is not apparent on the face of the Complaint that security checks were not integral and indispensable to Plaintiff's job. Accordingly, Defendant's contention that Plaintiff did not sufficiently plead around the portal-to-Portal Act is rejected.

Defendant further contends the Portal-to-Portal Act bars Plaintiff's claim for compensation of the time spent driving from the security checkpoint to the worksite. *See* 29 U.S.C. § 254(a)(1) ("walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform" is not compensable). Plaintiff's allegations fall squarely within the statute and

Plaintiff does not respond to Defendant's this argument.  Accordingly, Plaintiff has consented to granting Defendant's motion on this point.  *See* Civ. Loc. Rule 7.1(f)(3)(b)&(c) (failure to address moving party's argument waives opposition and may constitute consent to the granting of motion).  Accordingly, to the extent Plaintiff's claim is based on uncompensated drive time, it is dismissed.

Finally, Defendant contends that Plaintiff has not sufficiently alleged unpaid meal periods.  Plaintiff alleged that "Defendant[] engaged in a policy of automatically deducting 30-minute meal periods each day regardless of Plaintiff's … ability to take a compliant meal period[,]" and that each time he worked through his meal period, this practice resulted in unpaid work.  (Compl. ¶¶ 36-38.)

Defendant argues that an auto-deduct policy, on its own, is not sufficient to state a claim for unpaid meal periods.  However, Plaintiff did not merely allege that Defendant had an auto-deduct policy.  He alleged that the policy applied even when Plaintiff was not able to take a break and therefore resulted in unpaid time.  At the motion to dismiss stage, these allegations are sufficient to give Defendant fair notice and enable it to prepare a defense.  *See Starr,* 652 F.3d at 1216.

## III.   CONCLUSION

For the foregoing reasons, Defendant's motion is granted to the extent Plaintiff did not oppose dismissal of his claim for unpaid wages based on driving from the security checkpoint to the worksite.  Defendant's motion is denied in all other respects.

**IT IS SO ORDERED.**

Dated:  March 3, 2025

*Janis L. Sammartino*
for  Hon. M. James Lorenz
United States District Judge